OPINION
{¶ 1} In case number 9-06-25, Mother-Appellant, Jaclyn Cunningham, and Father-Appellant, Feliciano Esparza, appeal the judgment of the Marion County Court of Common Pleas, Family Division, granting permanent custody of Antonio Esparza to the Marion County Children Services Board (hereinafter referred to as "MCCSB"). In case number 9-06-27, Mother appeals the judgment of the Marion County Court of Common pleas, Family Division, granting permanent custody of Levi Shuster to the MCCSB. In this consolidated appeal, Mother argues that the trial court erred in finding that MCCSB made reasonable efforts to avoid placement and by not providing specific reasons for its determinations; that the trial court erred in not striking MCCSB's closing argument; that the trial court erred in failing to make required findings under R.C. 2151.414(E); that the manifest weight of the evidence supported her contention that her children could be returned to her within a reasonable time; that MCCSB failed to act in good faith in its efforts to implement its reunification plan; and that the trial court's decision to terminate her parental rights is against the manifest weight of the evidence. Also, Feliciano argues that the trial court failed to make a required finding under R.C. 2151.353(A)(4) or any findings under R.C. 2151.414(D) and did not find that Antonio could not be reunited with either parent within a reasonable time; that the trial court did not determine whether any of the factors listed in R.C. 2151.414(E) applied to him; that MCCSB did not provide reasonable case planning or diligent efforts with respect to him or Mother; that the evidence supported a finding that the children could be reunited with Mother within a reasonable time; and, that the trial court erred in not striking MCCSB's closing argument. Finding that the trial court failed to determine that Antonio and Levi could not be returned to Mother or Feliciano within a reasonable time, or should not be placed with Mother or Feliciano, we reverse the judgments of the trial court and remand for further proceedings consistent with this opinion.
 {¶ 2} On April 27, 2004, MCCSB filed a motion for ex parte custody of Antonio and Levi. Antonio (DOB: 6/17/03) is the child of Mother and Feliciano. Levi (DOB: 7/19/01) is the child of Mother and Doug Shuster. (Hereinafter Antonio and Levi are jointly referred to as "the boys"). Subsequently, the trial court granted MCCSB's motion and placed the boys in the temporary custody of MCCSB.
 {¶ 3} In May of 2004, MCCSB filed complaints alleging that the boys were neglected and dependent as defined in R.C. 2151.03 and R.C.2151.04. Additionally, the trial court appointed a Guardian Ad Litem for the boys.
 {¶ 4} In June of 2004, MCCSB submitted a case plan for the boys, which the trial court approved and incorporated into the disposition entry.
 {¶ 5} In July of 2004, MCCSB moved to dismiss the May 2004 complaints without prejudice, which the trial court granted. Additionally, MCCSB filed new complaints alleging that the boys were neglected and dependent as defined in R.C. 2151.03 and R.C. 2151.04.
 {¶ 6} In November of 2004, MCCSB moved to dismiss the July 2004 complaints without prejudice, which the trial court granted. Additionally, MCCSB filed new complaints alleging that the boys were neglected and dependent as defined in R.C. 2151.03 and R.C. 2151.04.
 {¶ 7} In December of 2005, MCCSB filed an amended case plan for the boys.
 {¶ 8} On January 5, 2005, the magistrate found the boys to be dependent and neglected and granted temporary custody to MCCSB. Additionally, the trial court approved the magistrate's decision, found the boys to be dependent and neglected and granted temporary custody of the boys to MCCSB. That decision was not appealed.
 {¶ 9} In March of 2005, an annual court and case plan review was held. After which, the trial court informed the parties that all prior orders remained in full force and effect.
 {¶ 10} In June of 2005, MCCSB moved for permanent commitment of the boys, under R.C. 2151.353 and R.C. 2151.414.
 {¶ 11} In December of 2005, MCCSB filed its second amended case plan and a motion to find Mother in contempt.
 {¶ 12} In January of 2006, Mother moved to modify MCCSB's second amended case plan (hereinafter referred to as "the Plan"). In her motion, Mother asserted that the Plan placed unreasonable expectations upon her and that the Plan was designed to create arguments to be used against her at the final hearing on MCCSB's motion for permanent commitment. Additionally, Mother moved to have the boys returned to her.
 {¶ 13} On January 30, February 1, and February 16, 2006, the trial court held hearings on MCCSB's motion requesting modification of temporary commitment of the boys to permanent commitment to MCCSB. Prior to hearing testimony, the trial court noted that Doug Shuster was not at the proceedings and has never made an appearance.[1] At the conclusion of the testimony, the trial court informed the parties that the Guardian Ad Litem's report and final arguments were to be filed by March 3, 2006.
 {¶ 14} In February of 2006, MCCSB conducted and filed with the trial court its Semi-Annual Administrative Review.
 {¶ 15} On March 3, 2006, Mother and Feliciano filed closing arguments and the Guardian Ad Litem filed his report, which recommended that the trial court deny MCCSB's motion for permanent custody.
 {¶ 16} On March 10, 2006, MCCSB filed its closing argument. Subsequently, Mother responded to MCCSB's closing argument and Mother and Feliciano moved to strike MCCSB's closing argument, because it was untimely filed.
 {¶ 17} On March 28, 2006, MCCSB moved for its annual court review and to extend temporary commitment until the trial court issued its decision, which the trial court granted.
 {¶ 18} In June of 2006, the trial court granted MCCSB's motion for permanent commitment of Antonio and Levi. In its judgment entry, the trial court listed 11 findings of fact:
 1. The mother, Jaclyn Cunningham has been diagnosed with alcoholism and is chemically dependent.
 2. Mother has demonstrated a lack of stability and permanency in her life.
 3. Janelle Koykendall of Stepping Stone House in Portsmouth, Ohio testified that the mother's plans were inconsistent, that mother constantly changed her plans, that she did not accomplish her goals as set forth in the relapse prevention program and that mother was overconfident in her assessment for her future in that she can't take responsibility and is very dependent on others.
 4. The foster mother testified that the children are very active. She testified that Antonio needed special food preparation for him to eat without struggling or choking. Ellen Bailey, Speech Pathologist, testified Antonio came to her with a diagnosis of fetal alcohol syndrome; that while he's 3 years old, he is at an eighteen month old level and he probably needs 5 years of treatment.
 6. Doug Shuster, father of Levi Shuster, has abandoned his child pursuant to O.R.C. 2141.414(E).
 7. Feliciano Esparza, father of Antonio Esparza, testified he wanted mother to have child so he could visit when he wanted. He does not pay support and makes minimal attempts at offered visitation.
 8. The Court has considered the report of the Guardian Ad Litem but does not find his recommendation to be in the best interests of the children.
 9. The Court finds it would be difficult for the mother to care for three children[2] at one time, and that there is little bonding between mother and the two children, Levi Shuster and Antonio Esparza.
 10. The Court finds the evidence presented was clear and convincing and it would be in the best interests of these children to grant Marion County Children Services motion for permanent commitment.
 11. The Court further finds that this order is in the best interests of the children and pursuant to O.R.C. 2151.419; Marion County Children Services has made reasonable efforts to eliminate the need for placement and reasonable efforts to finalize the children's permanency plan.
(June 2, 2006 Judgment Entry pp. 1-2). After making these findings, the trial court granted MCCSB's motion for permanent commitment of the boys.
 {¶ 19} It is from these judgments that Mother and Father appeal, presenting the following assignments of error for our review.
 Mother's Assignment of Error No. I The trial court erred in finding that Marion County Children Services made reasonable efforts to avoid placement and in not setting forth reasons supporting its determinations.
 Mother's Assignment of Error No. II The trial court erred when it did not strike [MC]CSB's prejudicial, inaccurate, and untimely filed closing argument
 Mother's Assignment of Error No. III The trial court failed to make a required finding that any provision of O.R.C. § 2151.414(E) applied to mother and the manifest weight of the evidence supported mother's contention that the children could be returned to her within a reasonable time
 Mother's Assignment of Error No. IV [MC]CSB failed to act in good faith in its efforts to implement its reunification plan
 Mother's Assignment of Error No. V The trial court's decision to terminate the relationship between mother and her children is contrary to the manifest weight of the evidence
 Feliciano's Assignment of Error No. I The trial court failed to make a required finding under R.C. § 2151.353(A)(4) or any findings under the five enumerated factors listed in R.C. 2151.414(D). Specifically, the trial court did not find that the children could not be reunited with either parent within a reasonable time.
 Feliciano's Assignment of Error No. II The trial Court (Sic.) did not determine by clear and convincing evidence that one or more of the sixteen factors listed in R.C. 2151.414(E) existed with regard to Appellant-Father Esparza.
 Feliciano's Assignment of Error No. III Marion CSB did not provide reasonable case planning or diligent efforts with regard to Appellant-Father Esparza, as their plan for visitation was not designed to allow any visits.
 Feliciano's Assignment of Error No. IV The evidence supported a finding that the children could be reunited with Appellant-Mother within a reasonable time. No finding by the Judgment Entry contradicts this conclusion.
 Feliciano's Assignment of Error No. V Marion CSB did not provide reasonable case planning or diligent efforts with regard to Appellant-Mother, as the requirements of the case plan proposed by Marion CSB and adopted by the Court (Appendix B) was in direct conflict with the advice and instruction of the caseworker, and Appellant-Mother was penalized by Marion CSB for following the court-approved case plan.
 Feliciano's Assignment of Error No. VI The trial court should have stricken Marion CSB's closing argument, because that closing argument was filed late, because it contained allegations of events occurring after the final day of the hearing and, therefore, not in evidence, and because these allegations of events were inaccurate and prejudicial.
 {¶ 20} Due to the nature of these assignments of error, we will address them together and out of order.
 Mother's Assignment of Error No. III Feliciano's Assignments of Error Nos. I, II IV {¶ 21} In Mother's third assignment of error, Mother argues that the trial court failed to make a required finding that any provision under R.C. 2151.414(E) applied to her and that the manifest weight of the evidence supported a finding that the boys could be returned to her within a reasonable time. In Feliciano's first assignment of error, Feliciano argues that the trial court failed to find that the boys could not be reunited with either of their parents within a reasonable time. In Feliciano's second assignment of error, Feliciano argues that the trial court did not determine by clear and convincing evidence that any provision under R.C. 2151.414(E) applied to him. In Feliciano's fourth assignment of error, Feliciano argues that the trial court did not make a finding that the boys could not be reunited with Mother within a reasonable time and the evidence presented supported a finding that the boys could be reunited with Mother within a reasonable time.
 {¶ 22} Our review of a grant of permanent custody begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes (1997),79 Ohio St.3d 46, 48, citing In re Murray (1990), 52 Ohio St.3d 155, 157.
 {¶ 23} R.C. 2151.353 provides, in pertinent part:
 (A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 * * *
 (2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home, or in any other home approved by the court; * * *
 (4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding.
 {¶ 24} Accordingly, once a child has been adjudicated dependent, neglected or abused, R.C. 2151.353(A)(2) allows the trial court to commit the child to the temporary custody of a public child services agency and R.C. 2151.353(A)(4) allows the trial court to commit the child to the permanent custody of a public services agency after making required findings.
 {¶ 25} In the case sub judice, MCCSB received temporary custody of the boys on April 27, 2004, and has now moved to modify its temporary custody to permanent custody. Therefore, R.C. 2151.353 does not apply. Once a child has been adjudicated dependent, neglected or abused and temporary custody has been granted to a children services agency, the agency may file a motion for permanent custody under R.C.2151.415(A)(4). Guidelines for the permanent custody hearing and the determinations the trial court must make are set out in R.C. 2151.414. R.C. 2151.414(B) provides, in pertinent part:
 (1) * * * the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 26} Once the trial court has determined that one of the conditions of R.C. 2151.414(B)(1) exists, it must then determine by clear and convincing evidence that permanent custody is in the best interest of the children. Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate ofHaynes (1986), 25 Ohio St.3d 101, 103-04. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross v. Ledford (1954), 161 Ohio St. 469, 477 citingFord v. Osborne (1887), 45 Ohio St. 1, Cole v. McClure (1913),88 Ohio St. 1, and Frate v. Rimenik (1926), 115 Ohio St. 11. Thus, we are required to determine whether the evidence was sufficient for the trial court to satisfy the requisite degree of proof.
 {¶ 27} Additionally, the best interest determination focuses on the child, not the parent. R.C. 2151.414(C) prohibits the trial court from considering "the effect the granting of permanent custody to the agency would have upon any parent of the child." When determining whether it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody, the trial court shall consider all relevant factors including, but not limited to, those listed in R.C. 2151.414(D).[3] R.C. 2151.414(D) provides, in pertinent part:
 [T]he court shall consider all relevant factors, including but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 28} When determining whether a child should not or cannot be placed with either of his parents within a reasonable time, the trial court is required to find one or more of the sixteen factors listed in R.C.2151.414(E) present as to each parent by clear and convincing evidence.
 {¶ 29} Initially, we note that the parties in this case did not request the court to issue findings of fact and conclusions of law under R.C. 2151.414(C). Therefore, this Court must assume "the regularity of the trial court's methodology" when reviewing the record and discussing Mother and Feliciano's assignments of error. In re McKean (Apr. 22, 1998), 3d Dist. Nos. 1-97-46, 1-97-47, quoting Zacek v. Zacek (1983), 11 Ohio App.3d 91, 95.
 {¶ 30} We also note that the trial court's journal entry fails to indicate which section of R.C. 2151.414(B) the trial court applied when it granted permanent custody to MCCSB. Also, the trial court failed to make a determination that either Mother or Feliciano abandoned or orphaned the boys; therefore, we must determine whether the trial court could have applied R.C. 2151.353(B)(1)(a) or 2151.353(B)(1)(d).
 {¶ 31} In interpreting R.C. 2151.414(B)(1), the Ohio Supreme Court has held that the child must have been in the custody of the agency for at least twelve of the previous twenty-two months prior to the filing of the motion for permanent custody in order for the trial court to grant permanent custody based on R.C. 2151.414(B)(1)(d) grounds. In reC.W., 104 Ohio St.3d 163, 2004-Ohio-6411, at ¶ 26. "In other words, the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." Id.
 {¶ 32} It is clear from the record that the boys had not been in the temporary custody of MCCSB for a period of twelve of the last twenty-two months prior to the filing of the permanent custody motions on June 21, 2005. According to R.C. 2151.414(B)(1), a child is "considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." The boys were removed from the home on April 27, 2004. Sixty days from that date is June 26, 2004. The boys were adjudicated neglected and dependent on January 5, 2005. Thus, the boys are considered to have entered the temporary custody of MCCSB on the earlier of the two dates, June 26, 2004, and MCCSB's motion for permanent custody, which was filed on June 21, 2005, was obviously filed prior to the boys having been in MCCSB's temporary custody for twelve months.
 {¶ 33} Accordingly, the trial court could not have proceeded to grant permanent custody of the boys to MCCSB under R.C. 2151.414(B)(1)(d); instead the trial court must have proceeded under R.C.2151.414(B)(1)(a). Accordingly, under R.C. 2151.414(B)(1)(a), the trial court must determine by clear and convincing evidence that (1) it is in the best interest of the boys to grant permanent custody of them to MCCSB, and (2) the boys cannot be placed with either of the boys' parents within a reasonable time or should not be placed with their parents. See In re Culp, 3d Dist. Nos. 1-05-02, 1-05-03, 1-05-04,2005-Ohio-3764, at ¶ 12.
 {¶ 34} In its journal entry, the trial court found that "the evidence presented was clear and convincing and it would be in the best interest of [the boys] to grant [MCCSB's] motion for permanent commitment." We cannot find that the trial court abused its discretion in making this determination. However, the trial court failed to determine, by clear and convincing evidence, that the boys cannot be placed with either of the boys' parents within a reasonable time or should not be placed with their parents. Accordingly, the trial court erred and Mother's third and Feliciano's first, second, and fourth assignments of error are well taken.
 Mother's Assignments of Error Nos. I, II, IV, V Feliciano's Assignments of Error Nos. III, V, VI {¶ 35} In Mother's first assignment of error, Mother argues that the trial court erred in finding that MCCSB made reasonable efforts to avoid placement and in failing to provide reasons supporting its determination. In Mother's second assignment of error and Feliciano's sixth assignment of error, Mother and Feliciano argue that the trial court erred in not striking MCCSB's closing argument, because it was untimely filed and included allegations of events occurring after the hearing, which was prejudicial to them. In Mother's fourth assignment of error and Feliciano's fifth assignment of error, Mother and Feliciano argue that MCCSB failed to act in good faith in its efforts to implement its reunification plan. In Mother's fifth assignment of error, Mother argues that the trial court's decision was against the manifest weight of the evidence. In Feliciano's third assignment of error, Feliciano argues that MCCSB did not provide reasonable case planning or diligent efforts with respect to him to implement its reunification plan.
 {¶ 36} Our disposition of Mother's third and Feliciano's first, second, and fourth assignments of error renders Mother's first, second, fourth, and fifth and Feliciano's third, fifth, and sixth assignments of error moot and we decline to address them. App.R. 12(A)(1)(c).
 {¶ 37} Having found error prejudicial to appellants herein, in the particulars assigned and argued, we reverse the judgments of the trial court as it relates to Mother and Feliciano, and remand the matter for further proceedings consistent with this opinion.
Judgments Reversed and Cause Remanded.
 BRYANT, J., concurs in judgment only. SHAW, J., dissents.
[1] We note that Shuster has not appealed the trial court's judgment.
[2] We note that Mother has a third minor child, who is not at issue in this appeal.
[3] We note that when R.C. 2151.414(B)(1)(d) applies, the trial court is not required to determine that the child cannot or should not be returned to either parent within a reasonable time. In re WilliamS., 75 Ohio St.3d 95, 99, 1996-Ohio-182; see, R.C. 2151.414(B), In reM.H., 8th Dist. No. 80629, 2002-Ohio-2968, at ¶ 25.