OPINION
{¶ 1} Mother-Appellant, Margaret Leonard, appeals from the judgment of the Seneca County Court of Common Pleas, Juvenile Division, granting Appellee, Seneca County Department of Job and Family Services (hereinafter referred to as "SCDJFS"), permanent custody of her daughter, Skye Scott. On appeal, Mother claims that the trial court's decision to terminate her parental rights and grant permanent custody to SCDJFS was against the manifest weight of the evidence and was not in Skye's best interest. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In December 22, 2005, SCDJFS filed a complaint alleging that Skye (DOB: 5/4/2004) was a neglected and dependent child following an incident whereby Mother attempted suicide in her presence and left a note purporting to grant custody of Skye to unrelated persons. Additionally, SCDJFS requested ex-parte temporary custody of Skye and appointment of a guardian ad litem (hereinafter referred to as "GAL"). The trial court granted both requests, and Skye was placed in temporary custody of SCDJFS the same day. *Page 3 
 {¶ 3} On January 19, 2006, the trial court adjudicated Skye as dependent under R.C. 2154.04(B)[1] pursuant to agreement of all parties; ordered that Skye remain in the temporary custody of SCDJFS; ordered Mother to pay child support to SCDJFS; and, ordered that Mother and Wayne Rider, Skye's biological father, have supervised visitation with Skye. Additionally, SCDJFS submitted a case plan, which the trial court approved. The case plan stated that Mother should be evaluated for mental health issues and take her medications as prescribed; that she should apply for financial assistance through SCDJFS; that she should find employment and maintain a home for Skye; and, that she should enroll in and complete counseling sessions and parenting classes. Additionally, reunification of Skye with Mother was listed as the goal of the case plan.
 {¶ 4} In February 2006, SCDJFS moved to extend its temporary custody of Skye, pursuant to all parties' agreement that Mother needed to make further progress on the case plan before she could regain custody, which the trial court granted.
 {¶ 5} In May 2006, the case came before the trial court for a semiannual review hearing, whereat all parties agreed that Skye should remain in temporary custody of SCDJFS because Mother was incarcerated in North Carolina[2] and Father's home had not been evaluated for suitability.
 {¶ 6} In June 2006, the trial court adopted the parties' May 2006 agreement that Skye remain in temporary custody of SCDJFS. Additionally, SCDJFS moved to amend *Page 4 
its prior case plan to reflect that Mother was incarcerated in North Carolina; that she had not completed counseling sessions; and, that she had not completed parenting classes.
 {¶ 7} In August 2006, the trial court held a semiannual review hearing, whereat all parties agreed that Skye should remain in temporary custody of SCDJFS, which the trial court adopted.
 {¶ 8} In September 2006, SCDJFS moved that Mother be held in contempt for failure to make full child support payments.
 {¶ 9} In October 2006, the trial court held a semiannual review hearing, whereat all parties agreed that Skye should remain in temporary custody of SCDJFS.
 {¶ 10} In December 2006, SCDJFS moved to amend its prior case plan to reflect that Mother had returned to Ohio; that she obtained employment; that she enrolled in individual and substance abuse counseling; that she displayed appropriate parenting skills during visits; and, that she was living with a man who had an extensive criminal history. The trial court granted the motion and approved the case plan. Additionally, the trial court held a hearing regarding SCDJFS' September 2006 motion requesting that Mother be held in contempt for failure to make full child support payments.
 {¶ 11} In January 2007, the trial court found Mother in Contempt for failure to make full child support payments based on the evidence presented at the December 2006 hearing. Subsequently, the trial court held a semiannual review hearing, whereat all *Page 5 
parties agreed that Skye should remain in temporary custody of SCDJFS. Mother did not appear at the hearing but was represented by her attorney.
 {¶ 12} In February 2007, the trial court adopted the parties' October 2006 agreement that Skye remain in temporary custody of SCDJFS.
 {¶ 13} In March 2007, SCDJFS moved for an order approving the voluntary permanent surrender of parental rights by Father. Additionally, SCDJFS moved for permanent custody of Skye on March 9, 2007, pursuant to R.C. 2151.413, 2151.414, and 2151.415, on the basis that Mother and Father had not made sufficient progress on the case plan; that being placed with Mother or Father was not in Skye's best interest; that Mother was unable to provide an adequate home for Skye because she was addicted to alcohol, bi-polar, and severely manic depressive; that she had failed to complete any treatment program; that she had failed to take medications to treat her depression and bipolar disorder; that she had been incarcerated multiple times in North Carolina; that she had been convicted of prostitution, felony breaking and entering, and child endangering; that she had not visited Skye since December 21, 2006; and, that, after being released from incarceration on May 24, 2006, she did not contact SCDJFS to visit Skye until one month later. SCDJFS attempted service on Mother by certified mail, which the postal service returned marked "Moved Left No Address." Subsequently, the trial court approved the voluntary permanent surrender of Father's parental rights. *Page 6 
 {¶ 14} In April 2007, the trial court held a semiannual review hearing, whereat all parties agreed that Skye should remain in temporary custody of SCDJFS. SCDJFS gave Mother notice of the hearing by posting after failing to locate her for service of notice. Mother did not appear at the hearing, but was represented by her attorney. Subsequently, the trial court adopted the parties' agreement that Skye remain in temporary custody of SCDJFS.
 {¶ 15} In May 2007, SCDJFS gave notice by posting to Mother regarding its motion for permanent custody after again failing to locate her. Additionally, the GAL filed a report recommending that the trial court grant SCDJFS permanent custody of Skye because Father voluntarily surrendered his parental rights and Mother had no contact with SCDJFS since the first week of January 2007, had no contact with Skye since December 2006, and had not taken parenting classes, obtained stable employment or housing, or participated in substance abuse counseling.
 {¶ 16} The case proceeded to hearing on May 16, 2007. Prior to hearing testimony, the trial court noted that Mother was not present. Thereafter, the following testimony was presented and facts adduced.
 {¶ 17} Erica Cleveland, a caseworker at SCDJFS, testified that she began working on Skye's case in December 2005 after Mother's suicide attempt and ceased working on the case plan on January 19, 2006; that Mother admitted to her that she attempted suicide; that Mother stated to her that "she was not able to care for [Skye]" and "knew she was *Page 7 
not the best parental option" because she had no transportation, did not know where any of the county offices for food stamps or Medicaid were, had no doctor for Skye, and had no food or means to prepare it (hearing tr., p. 22); that Mother had undergone psychiatric evaluation and, after being released, transferred to a homeless shelter; that, in 2006, Mother left the homeless shelter after two days without leaving any address or phone number where she could be located; that SCDJFS currently had no knowledge of Mother's whereabouts; that, before disappearing, Mother had complied "with a couple of the objectives on the Case Plan for a period of time, and no significant progress was ever made" (hearing tr., p. 18); that Mother was aware she was mentally ill, but "never followed through with treatment or diagnosis" (hearing tr., p. 19); and, that Mother had not visited Skye in the past ninety days.
 {¶ 18} Doug Siesel, Skye's foster father, testified that Skye has lived with his family since December 2005; that Skye knows who her biological mother is; that Mother has never contacted him or his wife or requested photographs or information about Skye, but that he provided her with photographs prior to her disappearance; that he believes Skye would like to see Mother, however Skye "says she's very happy and she says herself that — without being prompted — that she's happy living in our house and she likes living there" (hearing tr., p. 38); that he and his wife have bonded with Skye and are able and willing to adopt Skye; that Skye calls him "dad", calls his wife "mom", and calls his son "brother"; and, that Skye is very healthy and has been enrolled in preschool. *Page 8 
 {¶ 19} Erin Tea, a social worker at SCDJFS, testified that Skye has been in SCDJFS' custody for one and one-half years; that she participated in Mother's case plan; that Mother did not participate in a mental health evaluation as required under the case plan until October 2006; that Mother did not complete counseling for her mental health issues or take any medications to treat her mental illnesses as required under the case plan, despite being offered financial assistance by SCDJFS; that Mother was not able to maintain employment as required under the case plan; and, that Mother's overall progress on the case plan was "below minimum."
 {¶ 20} Additionally, Tea testified that she had not had direct contact with Mother since December 21, 2006; that her last indirect contact with Mother was a voicemail that she received from Mother on January 3, 2007, giving her a phone number and stating "for [Tea] to call her back as it was an emergency" (hearing tr., p. 63); that she attempted numerous times to contact Mother at the phone number and left messages on the voice mail, but was unsuccessful; and, that Mother never called her back.
 {¶ 21} Further, Tea testified that Skye refers to Mother as "Skye's mom" and refers to her foster mother as "mom"; that Mother regularly visited Skye until her incarceration from March 2006 until May 2006, and, after her release, until December 21, 2006; that Mother has not visited Skye in the last ninety days or sent her any cards, gifts, or letters; that Mother has not made any significant progress on the case plan; and, that Mother is not currently paying any child support for Skye. *Page 9 
 {¶ 22} Rebecca Herner, Skye's GAL since May 2007, testified that "the things [Mother] was supposed to do on the Case Plan, she simply never got the motivation to get any of them completed. She'd do a little bit here and then would stop, and do a little bit there and stop. And some things she never got done, never even began some of her issues" (hearing tr., p. 43); that Mother had made some attempt to comply with the case plan by going to North Carolina to take care of a warrant and serve her prison sentence; that "we don't know if [Mother] physically exists or not. We know she's not around here, but even if she were here, she had a year and half already to complete the case plan objective[s] and hadn't completed any one of them * * *" (hearing tr., p. 44); that immediately prior to Mother's last visit with Skye, she "contacted the Agency and talked with a worker there indicating that she thought long and hard about it and she wanted to sign off her legal rights to Skye" (hearing tr., p. 49); that Mother never told her that she intended to reunify with Skye; and, that it was not in Skye's best interest to give Mother an extension to continue to work on the case plan because "we don't know where [Mother] is and no one has known where she is for, approximately, six months." (Hearing Tr., p. 45).
 {¶ 23} Subsequently, the trial court terminated Mother's parental rights, granted permanent custody of Skye to SCDJFS, and approved the case plan amendment whereby the goal was changed from reunification to adoption. Additionally, the trial court granted Mother's counsel's motion to withdraw and appointed her new counsel for purposes of *Page 10 
appeal. In the trial court's judgment entry granting SCDJFS permanent custody, the trial court listed the following findings of fact:
 69. In the instant action Skye was adjudicated Dependent pursuant to R.C. 2151.04(B) on January 19, 2006.
 70. Skye was removed from the home of [Mother] and placed in foster care in the Temporary Custody of [SCDJFS] on December 22, 2005.
 71. Skye has continuously remained in foster care in the temporary custody of [SCDJFS] since December 22, 2005.
 72. The instant Motion for Permanent Custody was filed on March 9, 2007.
 * * *
 74. From January 19, 2006, until the filing of the Motion for Permanent Custody on March 9, 2007 is more than 12 months.
 75. Based upon the court's computations, the court finds by clear and convincing evidence that Skye has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 19, 1999.
 * * *
 76. (1) Skye has * * * had one consistent foster placement. Since the initiation of this action, Father has voluntarily surrendered his parental rights to Skye in favor of [SCDJFS]. * * * Mother was visiting with Skye on a regular basis in a supervised visitation setting until December 21, 2006. mother's whereabouts is unknown at this time. Skye is bonded with her foster parents and foster siblings. Foster parents want to adopt Skye. * * * Mother acknowledged that she was unable to care for Skye.
 (2) The [GAL] states that Skye wants to live with her foster family "forever" * * * and the [GAL] recommends that Mother's parental rights be terminated and that Skye be placed in the permanent custody of [SCDJFS].
 * * *
 (4) Mother has identified that she is not capable of taking care of Skye. Mother has failed to comply with the case plan. Mother has failed to identify her mental health issues and consistently comply with treatment plans and protocols. Mother attempted suicide in the presence of Skye and was going to place her with a non-relative family *Page 11 
 that was found to not be suitable. Mother has lived in 5 different locations since the initiation of this action.
 * * *
 (10) Mother has abandoned Skye. She has not had contact or communication with Skye since December 21, 2006.
 * * *
 77. (1) [SCDJFS] has used reasonable case planning and diligent efforts to assist mother to remedy the problems that have caused Skye to be placed outside the home. Mother has failed continuously and repeatedly to substantially remedy the conditions causing Skye to be placed outside her home. * * * Although Mother identifies and acknowledges that she has mental health issues, she has refused to comply with treatment protocols to manage her health issues. Mother has not maintained stable housing. Mother has not maintained stable employment. * * * The court finds by clear and convincing evidence that factor 2151.414 (E)(1) exists.
 * * *
 (4) Mother has demonstrated a lack of commitment toward Skye by failing to regularly support, visit, and communicate with Skye. Mother has elected to stop visits with Skye. She terminated the scheduled visit for December 28, 2006 and has not re-established communication or visits with Skye * * *. Mother's lack of commitment toward Skye is further reflected by her failure to follow up with [SCDJFS] since January 3, 2007 to check on the status and well being of Skye. Mother has also demonstrated a lack of commitment toward Skye by failing to comply with the terms of the case plan. * * * The court finds by clear and convincing evidence that factor 2151.414(E)(4) exists. (10) The court does find by clear and convincing evidence that Skye has been abandoned by Mother.
 * * *
 (16) * * * Mother's choice to not comply with the case plan, address her mental health needs, and to continue to visit with Skye, are all factors that have prevented the safe and healthy return and reunification with Mother. The court finds by clear and convincing evidence that Factor 2151.414(E)(16) exists.
 {¶ 24} Additionally, the trial court made the following conclusions of law:
 78. * * * The court finds by clear and convincing evidence that it is in the best interests of Skye to grant permanent custody to [SCDJFS]. *Page 12 
 79. Based on the evidence admitted, the arguments of counsel, and the law, and after due consideration of each of those factors by clear and convincing evidence under R.C. 2151.414(B)(1)(d), R.C. 2151.414(D) and R.C. 2151.414(E)(7)-(11), and after considering by clear and convincing evidence whether one or more of the conditions enumerated in 2151.414(E) exists with respect to Skye, the court finds by clear and convincing evidence that permanent custody is in the best interest of Skye Scott and that the motion by [SCDJFS] terminating the parental rights of Mother should be granted.
 80. The court finds by clear and convincing evidence that Skye Scott should be placed in the permanent custody of [SCDJFS]. This placement is safe and healthy and in Skye's best interest.
 81. The court further finds by clear and convincing evidence that it would be contrary to the health and safety of Skye to be returned to the home of any parent.
 82. The court finds by clear and convincing evidence that [SCDJFS] has used and is using reasonable efforts as required by law with regard to Skye.
(Judgment Entry, p. 26-40).
 {¶ 25} It is from this judgment that Mother appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE COURT'S DECISION TO TERMINATE MARGARET LEONARD'S PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY OF THE MINOR CHILD TO THE SENECA COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. II THE COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILD TO THE DEPARTMENT OF JOB AND FAMILY SERVICES AS PERMANENT CUSTODY IS NOT IN THE BEST INTEREST OF THE MINOR CHILD. *Page 13 
 {¶ 26} Due to the nature of Mother's assignments of error, we elect to address them together.
 Assignments of Error Nos. I and II {¶ 27} In her first assignment of error, Mother contends that the trial court's decision to terminate her parental rights and grant SCDJFS permanent custody of Skye was against the manifest weight of the evidence. Specifically, Mother asserts that the record contains no evidence showing that from the period of January 3, 2007, to May 16, 2007, she was able to support, visit, or communicate with Skye, or that she chose not to participate in the case plan or attend the hearings.
 {¶ 28} In her second assignment of error, Mother contends that the trial court erred in granting SCDJFS permanent custody of Skye because it is not in her best interest. Specifically, Mother asserts that Skye is not old enough to verbalize her desire to live with Mother or with her foster parents; that the primary reason her parental rights were terminated is because she disappeared; and, that if she was eventually located, she might be able to complete her case plan effectively. We disagree.
 {¶ 29} Our review of a grant of permanent custody begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes (1997),79 Ohio St.3d 46, 48, citing In re Murray (1990), 52 Ohio St.3d 155, 157. Parents have a fundamental liberty interest in the care, custody, and upbringing of their children. Murray, 52 Ohio St.3d at 157; Santosky v. Kramer (1982),455 U.S. 745, *Page 14 
753. However, a natural parent's rights are not absolute. In reThomas, 3d Dist. No. 5-03-08, 2003-Ohio-5885, ¶ 7. "It is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed." In re Cunningham (1979), 59 Ohio St.2d 100, 106 (citations omitted).
 {¶ 30} Additionally, permanent custody determinations made under R.C.2151.414 must be supported by clear and convincing evidence. In re BabyGirl Doe, 149 Ohio App.3d 717, 738, 2002-Ohio-4470, citing In reHiatt (1993), 86 Ohio App.3d 716, 725. Clear and convincing evidence is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986), 25 Ohio St.3d 101, 104. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross v. Ledford (1954),161 Ohio St. 469, 477 citing Ford v. Osborne (1887), 45 Ohio St. 1, Cole v.McClure (1913), 88 Ohio St. 1, Frate v. Rimenik (1926), 115 Ohio St. 11. Thus, we are required to determine whether the trial court's determination was supported by sufficient credible evidence to satisfy the requisite degree of proof. In re McCann, 12th *Page 15 
Dist. No. CA2003-02-017, 2004-Ohio-283, ¶ 12, citing In re Starkey,150 Ohio App.3d 612, 617, 2002-Ohio-6892.
 {¶ 31} "Once a child has been adjudicated dependent, neglected, or abused and temporary custody has been granted to a children services agency, the agency may file a motion for permanent custody under R.C. 2151.415(A)(4)." In re Esparza, 3d Dist. Nos. 9-06-25, 9-06-27,2007-Ohio-113, ¶ 25. The trial court's analysis consists of two prongs. Firstly, the trial court must determine if any conditions enumerated in R.C. 2151.414 are present. If any of the conditions exist, the trial court must then move on to the second prong and determine whether permanent custody is in the best interest of the child.
 {¶ 32} The first prong of the analysis requires consideration of R.C.
2151.414(B)(1), which contains the pertinent conditions, and states, in pertinent part:
 [T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 * * *
 (b) The child is abandoned.
 * * *
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 33} For purposes of R.C. 2151.414(B)(1)(d), this court has held that "a child shall be considered to have entered the temporary custody of an agency on the earlier of *Page 16 
the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." Esparza, 2007-Ohio-113, at ¶ 25.
 {¶ 34} In the case sub judice, the trial court determined that the condition in R.C. 2151.414(B)(1)(d) was present. Skye was removed from Mother's home on December 22, 2005, and was adjudicated as dependent on January 19, 2006. Therefore, the adjudication date, January 19, 2006, will be used in determining the period of custody because it is within sixty days of removal and, therefore, the earlier date. The record reflects that Skye has remained in the temporary custody of SCDJFS since January 19, 2006 and that SCDJFS moved for permanent custody on March 9, 2007. Therefore, Skye was clearly in the temporary custody of the agency for well over twelve months of a consecutive twenty-two month period prior to SCDJFS' motion for permanent custody. Thus, we find that there was competent and credible evidence supporting the trial court's finding under R.C. 2151.414(B)(1)(d).
 {¶ 35} Additionally, the trial court found by clear and convincing evidence that Skye could not or should not be returned to either parent within a reasonable time under R.C. 2151.414(E)(4). Although Mother contends that R.C. 2151.414(E)(4) requires that SCDJFS prove her ability to support, visit, or communicate with Skye, we note that, given R.C.2151.414(B)(1)(d) applies, the trial court was not required to make such determination or consider such factor. Esparza, 2007-Ohio-113, at fn. 3, citing In re *Page 17 William S., 75 Ohio St.3d 95, 99, 1996-Ohio-182. Therefore, the trial court's additional findings under R.C. 2151.414(E)(4) were superfluous and we need not address Mother's argument challenging those findings.
 {¶ 36} After finding that one of the R.C. 2151.414(B)(1) conditions was present, the trial court was required to move to the second prong of the analysis and determine by clear and convincing evidence that permanent custody was in Skye's best interest.
 {¶ 37} In determining whether it is in the child's best interest to grant permanent custody to the agency, R.C. 2151.414 directs the trial court to consider the following nonexclusive factors:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's [GAL], with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 38} Here, Mother contends that the trial court erred in granting SCDJFS permanent custody because Skye is not old enough to verbalize her desire to live with Mother or with her foster parents; that the primary reason her parental rights were *Page 18 
terminated is because she disappeared; and, that if she was eventually located, she might be able to complete her case plan effectively. However, the trial court found that Skye had been in the temporary custody of SCDJFS for twelve or more months of a consecutive twenty-two month period ending on or after March 19, 1999; that Skye has had one consistent foster placement, is bonded with her foster parents and sibling, and has stated that she wanted to live with them "forever"; that the GAL recommended terminating Mother's parental rights; that Father surrendered his parental rights of Skye; that Mother acknowledged that she was unable to care for Skye and has failed to comply with the case plan; that Mother has not visited Skye since December 21, 2006, and her whereabouts are currently unknown; that Mother has mental health issues and has failed to comply with treatment plans; that Mother attempted suicide in Skye's presence and was going to place her with non-related, unsuitable persons; and, that Mother has abandoned Skye. Therefore, the record reflects that the trial court considered all of the necessary factors, as well as some additional factors. Thus, we find that there is competent, credible evidence to support the trial court's decision that granting SCDJFS permanent custody of Skye was in her best interest.
 {¶ 39} Finally, although Mother argues that the court should not presume that she is making a conscious choice to avoid the proceedings at issue or to complete her case plan and that no one will be motivated to search for her once her parental rights are severed, we note that the "* * * best interest determination focuses on the child, not the *Page 19 
parent." In re Esparza, 2007-Ohio-113, at ¶ 27. In fact, R.C.2151.414(C) specifically prohibits the trial court from considering "the effect the granting of permanent custody to the agency would have upon any parent of the child."
 {¶ 40} Accordingly, Mother's assignments of error are overruled.
 {¶ 41} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW and WILLAMOWSKI, JJ., concur.
[1] SCDJFS moved to strike its prior allegation of neglect, which the trial court granted.
[2] Mother's incarceration was unrelated to the proceedings at issue. *Page 1