OPINION *Page 2 
{¶ 1} In cases numbered 17-08-12 and 17-08-13, Father-Appellant, Robert Joseph Goodwin, appeals the judgments of the Shelby County Court of Common Pleas, Juvenile Division, granting permanent custody of his children, Robert Goodwin Jr. and Savanna Goodwin, to the Shelby County Department of Job and Family Services, Child Services Division ("CSD"). In this consolidated appeal, Father asserts that the trial court erred in granting permanent custody to CSD because clear and convincing evidence did not establish that the children could not be returned to him within a reasonable period of time and that permanent custody was in the children's best interests, pursuant to R.C. 2151.414(B)(1)(a). Finding *Page 3 
that the trial court did not abuse its discretion in granting permanent custody to CSD, we affirm the judgments of the trial court.
 {¶ 2} Father and Crystal Oyer, Mother, are the parents of Robert Jr. (DOB: 2/24/2006) and Savanna (DOB: 4/22/2003) (Robert and Savanna jointly referred to as "the children"). Both Father's and Mother's parental rights were terminated by the trial court's judgments, but Mother has not appealed the judgments. Therefore, this appeal only concerns Father's parental rights.
 {¶ 3} In March 2007, CSD filed complaints alleging that the children were abused, neglected, and dependant because they were often unsupervised and the family home was unclean and unsafe, as two other children living in the home had started a fire with a lighter kept within their reach.[1] In addition, CSD moved for emergency temporary custody. Subsequently, the trial court granted immediate temporary custody to CSD and ordered an emergency shelter care hearing.
 {¶ 4} In April 2007, the trial court held the emergency shelter care hearing, at which the court ordered that the children remain in the dispositional interim custody of CSD. Subsequently, an adjudicatory hearing was held, at which the trial court adjudicated the children neglected and dependant pursuant to R.C. 2151.03(b), (c) and R.C. 2151.04(a), (b), (c), and ordered the children to remain in the custody of CSD. *Page 4 
 {¶ 5} In June 2007, the trial court approved a case plan proposed by CSD, which provided for eventual reunification of the children to their parents. In addition, the court granted temporary custody to CSD.
 {¶ 6} In October 2007, CSD moved for permanent custody of the children. The motion was made on the basis that Father and Mother had prior involvement with CSD, including having Savanna temporarily removed from their home in 2004; that both failed to demonstrate an improved ability to properly care for the children; that there were ongoing concerns with the condition of the home and its suitability for children; that Father and Mother failed to attend multiple scheduled appointments for the children; and, that Dr. Fred Sacks, who conducted psychological evaluations of Father and Mother, recommended that their parental rights be terminated.
 {¶ 7} In November 2007, January 2008, and March 2008, the trial court held custody hearings at which the following testimony was adduced.
 {¶ 8} Dr. Fred Sacks, an expert psychologist, testified that he has performed several evaluations of Father in relation to this case; that he had previously evaluated Father in 2004 and found him to be a fit parent; that Father has improved in his parenting skills since 2004; that he is more invested with the children than he was in 2004; that he has demonstrated the ability to learn from parental skill counseling; that he has a good understanding of what it takes to be a *Page 5 
good parent; that, based on several tests conducted on Father, there is nothing to suggest he could not be a good parent; that he might have the ability to be an effective parent without Mother; that he has recognized his shortcomings as a parent and thinks he can correct them; and, that he has the ability to be a good parent with the appropriate training and mentorship, "contingent upon him being dedicated towards that goal." (Jan. 2008 Custody Hearing Tr., p. 136).
 {¶ 9} In addition, Dr. Sacks testified to the many concerns he has regarding Father's parenting abilities, stating that Father has a "repeated failure to heed warnings that have been given to him about the risks that might come to his children" (Jan. 2008 custody hearing tr., p. 69); that, although he is capable of changing his behavior and becoming an effective parent, there is a small probability of this actually happening; that his level of involvement and care for his children is low; and, that he has four other children from previous relationships, two of whom he has no contact with, and two of whom he sees only once a week. Dr. Sacks continued that, although Father states he has an interest in being a better parent, he fails to take the initiative to change, and "if he were to remain this way, * * * there would be considerable risks." (Jan. 2008 Custody Hearing Tr., p. 70). In his overall assessment of Father's parenting abilities, Dr. Sacks testified that, "I believe he provides some good care, some minimally adequate care, but he also has episodes where he slips below the bar, the bar of *Page 6 
being an adequate parent, and, in those occasions, his children are at serious risks [sic]." (Jan. 2008 Custody Hearing Tr., p. 72-73).
 {¶ 10} Janice Geise, an employee of Special Alternatives for Families and Youth ("SAFY"), an organization providing in-home parental coaching, testified that she supervised visits between Father and the children at the agency; that these visits were generally two hours each, twice a week; that Father has made almost all of the scheduled visits; that, on several visits, she has had to redirect him to pay more attention to the children; that, on one occasion, she had to direct Father to stop Savanna from playing with a knife; and, that on another visit, Father watched a movie the entire time while the children played by themselves. She further testified that, besides feeding the children lunch when he comes to visit them at the center, Father initiates little interaction with the children; that when she attempted to get Father on a budget, little progress was made because of his lack of participation; that Father follows her instructions when she coaches him on how to interact with the children; but, that he gets easily frustrated and needs constant reminding of how to conduct himself.
 {¶ 11} Jessica Eversole, a CSD social worker assigned to the cases, testified that she has been involved with the children since April 2007; that Father was evicted shortly after the children were taken from the home; that Father is currently living with a friend in a residence not suitable for children; that he has *Page 7 
secured an apartment he intends to repair for himself and the children to live in; but, that he has still failed to make the necessary repairs, as there were still holes in the walls, things all over the floor, and the gas was still not turned on. She continued that, on observing interactions between Father and the children, he does well when the children are well-behaved but ignores the problems and backs away from the situation when problems arise; that he has difficulties watching both children at the same time; that she rarely sees Father express any affection for the children; and, that he was convicted of aggravated menacing and served jail time for threatening a CSD worker.
 {¶ 12} Eversole further testified that she agreed with Dr. Sacks' report that Father has demonstrated little interest and progress toward changing his parental behaviors; that he tends to blame others for his problems; that he has a history of being minimally involved with his children; and, that while he has the interest to be a better parent, he has put forth little effort towards achieving that goal.
 {¶ 13} Eversole also testified that she recommended permanent custody be given to CSD because Father has shown no significant improvement in his parenting skills, has not taken responsibility for some of the actions that have happened in the past, including the fire that the other children set at the home, and has failed to secure an appropriate residence for the children. Furthermore, Eversole stated that permanent custody is the best option because protective *Page 8 
supervision is not feasible, as it would require CSD being involved with the children for many years; because temporary custody is not in the best interests of the children, as they are in need of some type of permanency; and, because planned permanent living arrangement with Father is not the best option, as the children are still young and eligible for adoption, which would provide them with a more permanent living situation.
 {¶ 14} On cross-examination, Eversole admitted that she had not followed Dr. Sacks' recommendation to have Father and the children participate in a family therapy program in order to assist him in becoming a better parent. In addition, Eversole admitted that Father had substantially complied with the case plan adopted by the trial court in June 2007, with the exception of missing a few of Savanna's Head Start programs in the last couple of months.
 {¶ 15} Furthermore, the guardian ad litem submitted a report to the trial court stating that Father has admitted that he has not located suitable accommodations for the children; that he has no other housing prospects; that he is currently not in a position to take care of the children because he needs a couple of months to get things prepared; that, during the pendency of the action, he has not taken appropriate steps to become prepared to get the children back because he fails to see the need if he is not going to get the children anyway; and, that if the *Page 9 
children are returned to him, he will have to hire a babysitter because he cannot take care of the children during the day, even though he is presently unemployed.
 {¶ 16} In April 2008, the trial court granted permanent custody of the children to CSD pursuant to R.C. 2151.414(B). In the judgment order, the court listed the following findings of fact:
 [Father] should be visiting with his children outside of CSD in his own home, but he has not had his own home since July 2007. His agreement to rent a one bedroom uninhabitable dwelling and improve it to a two bedroom apartment is now in its sixth month. * * * The delay in having suitable accommodations is unreasonable. The expenses he is incurring for a non-habitable apartment are also unreasonable. He refused to work with the in-home coach on his finances.
 * * *
 He does not have a father-daughter relationship with his oldest child, Vanessa. He does not have a father-son relationship with his son, Levi. He does visit with two of his children, Alex and Colin, seeing them once a week. If [Father] had a home, he could have Alex and Colin stay overnight rather than "seeing" them once a week. He has no safe and secure place to exercise visits with any of his children.
 Dr. Sacks states that Robert and Savanna would be at considerable risk for harm if [Father] had paternal responsibilities. * * * [Father] has not been committed to provide accommodations for him and his children, work with the in-home coach on finances and budgeting or accept the fact that he is at least partially responsible for the children being removed from his home. * * * *Page 10 
 The Court finds that it is in the best interests of Robert and Savanna to be placed in the permanent custody of [CSD]. The Court finds that the children have had no interaction with their mother since July, 2007 and they have had no interaction with their siblings or other relatives since September, 2007. The wishes of the children as expressed through the Guardian ad Litem is [sic] that the paternal rights of [Mother] and [Father] be terminated and that they be placed in the permanent custody of [CSD]. Robert and Savanna need a secure permanent placement. [CSD] has used reasonable efforts to provide for that placement without seeking a grant of permanent custody. However, that placement can not be achieved without the grant of permanent custody to the agency.
 * * *
 It is the further finding of the Court by clear and convincing evidence that the children cannot be placed in [Father's] home within a reasonable time and should not be placed in his home for reasons that:
 (1) The Court further finds that based upon the actions and inactions of [Father], he cannot parent Robert and Savanna within a reasonable time. His history demonstrates that his [other] children are taken care of by their mother and he only visits with them. He is acting in the same manner with Robert and Savanna except they do not have a mother to care for them.
 * * *
 It is the further finding of the Court by clear and convincing evidence that it is in the best interest of the children, Robert and Savanna, to grant the motion of CSD for permanent custody * * *.
(April 2008 Judgment Order, pp. 8-10). *Page 11 
 {¶ 17} It is from these judgments Father appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILDREN TO THE SHELBY COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, CHILDREN SERVICES DIVISION, AS CLEAR AND CONVINCING EVIDENCE WAS NOT PRESENTED TO ESTABLISH THAT (1) THE CHILDREN COULD NOT BE RETURNED TO THE FATHER WITHIN A REASONABLE TIME AND (2) PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTERESTS.
 {¶ 18} In his sole assignment of error, Father asserts that the trial court erred in granting permanent custody of the children to CSD because it was not established by clear and convincing evidence that the children could not be returned to him within a reasonable time, or that permanent custody was in their best interests. Specifically, Father argues that he presented ample testimony demonstrating his ability to be an effective parent, and no testimony was presented to show that permanent custody was in the best interests of the children. We disagree.
 {¶ 19} In reviewing a grant of permanent custody, it is important to first note that "the right to raise a child is an `essential' and `basic' civil right." In re Hayes (1997), 79 Ohio St.3d 46, 48, citingIn re Murray (1990), 52 Ohio St.3d 155, 157. Although parents have a fundamental liberty interest in the upbringing of their children, those rights are not absolute. In re Thomas, 3d Dist. No. 5-03-08, *Page 12 2003-Ohio-5885, ¶ 7, citing Murray, 52 Ohio St.3d at 157. Parental rights "are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." In reCunningham (1979), 59 Ohio St.2d 100, 106 (citation omitted).
 {¶ 20} All permanent custody determinations made under R.C. 2151.414
must be supported by clear and convincing evidence. In re Hiatt (1993),86 Ohio App.3d 716, 725. Clear and convincing evidence is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."In re Estate of Haynes (1986), 25 Ohio St.3d 101, 104. In determining whether the trial court's finding was supported by clear and convincing evidence, appellate courts "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross v. Ledford (1954), 161 Ohio St. 469,477, citing Ford v. Osborne (1887), 45 Ohio St. 1, Cole v. McClure
(1913), 88 Ohio St. 1, and Frate v. Rimenik (1926), 115 Ohio St. 11. As such, an appellate court must resolve whether the trial court's determination is supported by competent, credible evidence, Jones v.Lucas Cty. Children Serv. Bd. (1988), 46 Ohio App.3d 85, 86, and, absent a finding of abuse of discretion, the *Page 13 
trial court's determination will be upheld. In re Robison, 3d Dist. No. 5-07-41, 2008-Ohio-516, ¶ 8, citing Masters v. Masters (1994),69 Ohio St.3d 83, 85. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 21} "Once a child has been adjudicated dependent, neglected, or abused and temporary custody has been granted to a children services agency, the agency may file a motion for permanent custody under R.C. 2151.415(A)(4)." In re Esparza, 3d Dist. Nos. 9-06-25 9-06-27,2007-Ohio-113, ¶ 25. R.C. 2151.414 sets forth a two-prong analysis for granting permanent custody. First, the trial court must determine whether any conditions set forth under R.C. 2151.414(B)(1) are present. If a condition is found, the trial court then determines whether permanent custody is in the best interest of the child. See In reScott, 3d Dist. No. 13-07-18, 2007-Ohio-6426, ¶ 31.
 {¶ 22} R.C. 2151.414(B)(1) reads, in pertinent part,
 [T]he court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: (a) * * * the child cannot be placed with either of the child's *Page 14 parents within a reasonable time or should not be placed with the child's parents.
 {¶ 23} In analyzing the condition found in R.C. 2151.414(B)(1)(a), R.C. 2151.414(E) provides several factors that, if found by clear and convincing evidence, require the trial court to find that the child cannot not be placed with the parents within a reasonable period of time or should not be placed with the parents. These factors are, in pertinent part:
 (1) Following the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
 * * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 * * *
 (16) Any other factor the court considers relevant.
 {¶ 24} If the trial court finds that the child cannot be placed with the parents within a reasonable time or that the child should not be placed with the parents, the trial court then must move to the second prong of the analysis and determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(D) sets forth a list of non-exclusive factors the court may use in making this determination. These factors are, in pertinent part: *Page 15 
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 * * *
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 25} In the case sub judice, the trial court found that the children could not be placed in Father's home within a reasonable time and should not be placed with Father, under R.C 2151.414(B)(1)(a). Father asserts that the trial court erred in making this finding, as he presented evidence demonstrating that he understands what it takes to be a good father; that he has shown the ability to learn from counseling; that he is a "fit" parent; and, that he has substantially complied with the case plan.
 {¶ 26} However, the trial court found that Father has unreasonably failed to find a suitable residence for his children to live in; that he has no relationship with two of his children and a minimal relationship with two of his other children; that the children would be at risk for future harm if placed with him; that the children *Page 16 
are in need of a secure permanent placement; and, that a permanent placement cannot be achieved without a grant of permanent custody to CSD. Therefore, the record reflects that the trial court found the appropriate factors under R.C. 2151.414(E) to warrant the determination that the children cannot be placed with Father within a reasonable amount of time and that the children should not be placed with Father.
 {¶ 27} After making this determination, the trial court moved on to the second prong of the analysis, determining whether a grant of permanent custody to CSD is in the best interests of the children. Father contends that insufficient evidence was presented to warrant the trial court's finding that permanent custody is in the best interests of the children, as no evidence was presented as to the children's interaction and relationship with their parents, the children's desire as to who they want to live with, or any reasons why the children's need for a permanent placement cannot be achieved by a method other than a grant of permanent custody to CSD.
 {¶ 28} The trial court found that the children have had no interaction with Mother since July 2007, and no interaction with other siblings or relatives since September 2007; that the guardian ad litem, on behalf of the children, recommended that Father's parental rights be terminated; that the children are in need of a permanent placement; that CSD used reasonable efforts to provide for *Page 17 
that placement without the grant of permanent custody; but, that permanent placement cannot be achieved without a grant of permanent custody. While the trial court could have bolstered its determination that the grant of permanent custody is in the best interests of the children with additional findings, we find the trial court found sufficient evidence of the factors set forth under R.C. 2151.414(D) to support its conclusion that a grant of permanent custody to CSD was in the best interests of the children.
 {¶ 29} Because we find there to be competent, credible evidence to support the trial court's ruling that the children could not be placed with Father within a reasonable period of time; that the children should not be placed with Father; and, that granting permanent custody to CSD is in the best interests of the children, we find that the trial court did not abuse its discretion and that the grant of permanent custody should be upheld.
 {¶ 30} Accordingly, Father's assignment of error is overruled.
 {¶ 31} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] While other children were also removed from the home, they are not the subject of this appeal. *Page 1