[Cite as *In re M.O.*, 2020-Ohio-2780.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

M.O.,                                                    CASE NO.  5-19-29

ADJUDICATED NEGLECTED AND
DEPENDENT CHILD.

[CHEYANNE H. - APPELLANT]                    O P I N I O N
[RODOLFO O.  - APPELLANT]

Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 20173013

**Judgment Affirmed**

**Date of Decision:   May 4, 2020**

APPEARANCES:

    *Timothy J. Hoover* for Appellant, Rodolfo O.

    *Angela M. Elliott* for Appellant, Cheyanne H.

    *Wesley R. True* for Appellee

**ZIMMERMAN, J.**

{¶1} This is an appeal from the August 12, 2019 decision of the Hancock County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant, Cheyanne H., mother of M.O. ("Cheyanne"), and appellant, Rodolfo O., father of M.O. ("Rodolfo") (collectively "the parents"), and granted permanent custody of their minor child to Hancock County Department of Job and Family Services (the "agency") (collectively "the parties"). For the reasons that follow, we affirm.

{¶2} M.O., was born in 2014, to unmarried parents (Cheyanne and Rodolfo).[1] (Doc. No. 116); (*See* Agency Exs. 9, 10). On March 13, 2017, the agency filed a complaint alleging M.O. to be a neglected child under R.C. 2151.03(A)(2) and a dependent child under 2151.04(B) and (C). (Doc. No. 1). That same day, the agency filed a motion requesting that the trial court grant it emergency-temporary custody of M.O. which the trial court granted. (*Id.*).

{¶3} After a shelter-care hearing on March 15, 2017, the trial court concluded that probable cause existed to believe that M.O. was a neglected or dependent child; that it was in the child's best interest to be placed in the temporary custody of the agency; and that

---

[1] In addition to the instant minor child, M.O., Rodolfo has two-adult children whom are half-blood siblings of M.O.: Korrina B. and Dasia H. (Aug. 6, 2019 Tr., Vol. II, at 173-176, 188, 230, 236, 238, 239, 240, 249, 252, 330, 332, 348-387); (*See* Agency Ex. 16).

> *reasonable efforts* to prevent the need for removal of said child from her home were made in that the agency has completed a safety plan and offered counseling, relative search, and mental health and substance abuse counseling. Further, the Court finds that there was *probable cause* in granting the Ex-Parte Order.

(Emphasis sic.) (Doc. No. 5).

{¶4} The trial court appointed M.O. a Court Appointed Special Advocate/Guardian Ad Litem ("GAL") on March 22, 2017. (Doc. No. 4). The GAL filed a report in the trial court on May 24, 2017 recommending that the trial court grant temporary custody of M.O. to the agency. (Doc. No. 22).

{¶5} At the adjudicatory hearing on May 8, 2017, the trial court found M.O. to be a neglected and dependent child under R.C. 2151.03 and R.C. 2151.04. (Doc. No. 23).

{¶6} At the dispositional hearing on May 30, 2017, the trial court ordered that M.O. remain in the temporary custody of the agency and found

> *reasonable efforts* were made by [the agency] to prevent the need for removal of said child from her home in that the Agency has been working with the family and has provided counseling, case management, information and referrals, Help Me Grow, relative search, visitation, mental health and substance abuse assessments, parenting, and protective supervision.[2]

---

[2] Throughout the pendency of the case, the trial court approved the agency's case plans, which were submitted to the trial court on April 12, 2017, August 18, 2017, January 14, 2019, and May 24, 2019, and incorporated the case plans into its entries. (Doc. Nos. 11, 24, 35, 37, 39, 85, 87, 110, 116, 118). Cheyanne voluntarily agreed to participate and successfully complete the Hancock County Common Pleas Court, Juvenile Division's Family Dependency Treatment Court Program ("Treatment Court") on June 29, 2017. (Doc. Nos. 25, 26, 27, 28, 29, 30, 31, 32, 33, 40, 43, 44, 45, 46, 47, 48, 49, 50, 51, 53, 54, 55, 56, 58, 66, 68, 69, 70, 77). Notwithstanding the discrepancies in the Treatment Court entries regarding Cheyanne's days abstinent, she did not test positive on a drug screen until February and March 2019 after her successful completion of Treatment Court. (*See* Doc. Nos. 33, 37, 40, 41, 43, 44, 47, 48, 49, 50, 51, 53, 54, 55, 56, 58, 66, 68, 69, 70, 77, 79). Cheyanne's only sanction while in Treatment Court was for "l[ying] directly to the Court and

Case No. 5-19-29

(Emphasis sic.) (Doc. No. 24).

{¶7} On February 2, 2018, the agency filed a motion for a six-month extension of temporary custody, and thereafter, the trial court scheduled the extension hearing on March 13, 2018.[3] (Doc. No. 57). On February 28, 2018, the trial court granted the agency's motion for a change of disposition and returned M.O. to Cheyanne under an order of protective supervision.[4] (Doc. No. 59). The judgment entry granting the order of protective supervision had an effective date of March 8, 2018. (Doc. No. 62). While it is unclear from the record the actual date the agency returned M.O. physically to Cheyanne under the order of protective supervision, it is clear, however, that prior to March 8th, the agency filed a motion in the trial court to vacate the trial court's previous order.[5] (Doc. No. 64); (Aug. 6, 2019 Tr., Vol. II, at 195, 235).

{¶8} Ultimately, on March 6, 2018, the trial court granted the agency's motion to vacate its prior order (of February 28, 2018) and issued a new order finding it "in the best interests of [M.O.] to remain in the custody of [the agency]." (Doc. No. 65).

---

refus[ing] to correct said lie, despite being given numerous chances to do so" for which she was found in direct contempt and given a seven-day-jail sentence. (Doc. No. 46).

[3] The agency filed a second motion for a six-month extension on March 6, 2018. (Doc. No. 63).

[4] The change in disposition was agreed to by all parties. (Doc. No. 62).

[5] Cheyanne, Rodolfo, and M.O. were observed (on March 5, 2018) shopping together at Wal-Mart by an agency supervisor; this unsupervised contact between Rodolfo and M.O. was precluded based on Rodolfo's lack of progress on his case plan. (Doc. No. 64); (Aug. 6, 2019 Tr., Vol. II, at 195, 235). Cheyanne asserted to the ongoing caseworker, Lindsay Jones ("Jones"), that she called Rodolfo because she had no transportation to bring her and M.O. home. (Aug. 6, 2019 Tr., Vol. II, at 235).

-4-

{¶9} At the March 13, 2018 extension hearing, the trial court granted the agency's motion for a six-month extension ordering M.O. to remain in the agency's temporary custody finding:

> by clear and convincing evidence that *reasonable efforts* were made by the Agency in an attempt to finalize a permanency plan for said child inasmuch as the Agency has provided case management, visitation, parent education, domestic violence classes, and mental health and substance abuse treatment to both parents. The Agency has also coordinated with the probation department for [Rodolfo] and Family Dependency Treatment Court for [Cheyanne].

(Emphasis sic.) (Doc. No. 67). (*See* Doc. No. 63).

{¶10} Korrina B. ("Korrina") filed a motion to intervene on March 6, 2019. (Doc. No. 94). On March 7, 2019, the agency filed a motion for permanent custody. (Doc. No. 96). Rodolfo filed a motion for change of disposition requesting legal custody on behalf of Korrina which the trial court ordered to be heard in conjunction with the agency's motion for permanent custody. (Doc. No. 117).

{¶11} The GAL filed a report in the trial court on July 31, 2019 recommending that the trial court grant permanent custody of M.O. to the agency. (Doc. No. 114).

{¶12} On August 5, 2019, the parties filed agreed stipulations. (Doc. Nos. 116, 154). (*See* Aug. 5, 2019 Tr., Vol. I, at 10, 29); (Joint Exs. 1, 2).

{¶13} After conducting the permanent-custody hearing on August 5 and 6, 2019, the trial court granted permanent custody of the children to the agency on August 12, 2019. (Doc. No. 118).

{¶14} Cheyanne and Rodolfo filed separate notices of appeal. (Doc. Nos. 122, 138). Cheyanne sets forth three assignments of error and Rodolfo sets forth two assignments of error.

{¶15} We will begin by addressing the portion of Rodolfo's first assignment of error as to Korrina's motions followed by all of Cheyanne's and Rodolfo's assignments of error including the remaining portion of Rodolfo's first assignment of error as to Rodolfo's motion together as they raise similar arguments on appeal.

**Cheyanne's Assignment of Error No. 1**

**The Trial Court's Judgment in Granting Permanent Custody Was Against the Manifest Weight of the Evidence and Contrary to law.**

**Cheyanne's Assignment of Error No. 2**

**The Trial Court Erred in Granting Appellee's Motion for Permanent Custody and Abused its Discretion as the Procedure of ORC 2151.414 [sic] were not followed.**

**Cheyanne's Assignment of Error No. 3**

**The Trial Court Erred in Granting Permanent Custody as the Hancock County Child Services Board Did Not Use Reasonable Case Planning and Diligent Efforts to Reunify Parent and Child.**

**Rodolfo's Assignment of Error No. 1**

**The trial court erred and abused its discretion in denying the Motions of Korrina B. for custody and the Motion of Appellant Rodolfo O. for a change in Dispositional Orders.**

**Rodolfo's Assignment of Error No. 2**

**The Agency's case plan was not diligent nor reasonable under the circumstances of this case.**

{¶16} In her assignments of error, Cheyanne argues that the trial court erred in granting permanent custody of M.O. to the agency because it was against the manifest weight of the evidence, because the trial court failed to make the requisite findings under R.C. 2151.414, and because the agency failed to make reasonable and diligent efforts toward reunification. In his assignments of error Rodolfo argues that the trial court erred by denying Korrina's motions, by denying his motion for a change of disposition, and because the agency did not make reasonable efforts for reunification.

*Standard of Review*

{¶17} The right to raise one's child is a "basic" and "essential" "civil rights". *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not

absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6, citing *In re Palmer*, 12 Ohio St.3d 194, 196 (1984), *cert. denied*, 469 U.S. 1162, 105 S.Ct. 918 (1985).

{¶18} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. The trial court must find, by clear and convincing evidence that: (1) one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) "permanent custody is in the best interest of the child." *Id. See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994).

*Analysis*

{¶19} R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies

> or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> * * *
>
> (d)  The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

R.C. 2151.414(B)(1)(a), (d).

> Specifically concerning R.C. 2151.414(B)(1)(a), '[i]f one or more of the factors enumerated in R.C. 2151.414(E) is found to be present by clear and convincing evidence, the trial court shall find that the child cannot be placed with the parents within a reasonable period of time or should not be placed with the parents.'

*In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13, quoting *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 54, citing *In re Goodwin*, 3d Dist. Shelby No. 17-08-12, 2008-Ohio-5399, ¶ 23.

{¶20} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), and *In re*

*Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.* at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Ledford* at 477, citing *Ford v. Osborn*, 45 Ohio St. 1 (1887), *Cole v. McClure*, 88 Ohio St. 1 (1913), and *Frate v. Rimenik*, 155 Ohio St. 11 (1926). If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280-281 (1978).

{¶21} Moreover, issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier-of-fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶22} Furthermore,

'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier-of-fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."'

(Emphasis deleted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by statute and rev'd on other grounds, State v. Smith*, 80 Ohio St.3d 89 (1997), quoting Black's Law Dictionary 1594 (6th Ed. 1990).

*Standing of Korrina through Rodolfo*

{¶23} Before we review the merits of this case, we must address a threshold question raised in Rodolfo's first assignment of error. That is—to the extent that Rodolfo raises the claims of Korrina, M.O.'s paternal-half-blood-adult sibling, we must address this preliminary issue of standing.

'"[T]he question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.'"'

(Citations omitted.) *In the matter of B.T.H.*, 12th Dist. Butler No. CA2017-06-080, 2017-Ohio-8358, ¶ 28, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 178-179, (1973), quoting *Sierra Club v. Morton*,

405 U.S. 727, 732, 92 S.Ct. 1361 (1972). "'It is well-established that an appeal lies only on behalf of a party aggrieved by the final order appealed from.'" *Id.*, quoting *Williams v. McFarland Properties, L.L.C.*, 12th Dist. Butler No. CA2007-08-200, 2008-Ohio-3594, ¶ 29, citing *Midwest Fireworks Mfg. Co., Inc. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174 (2001). "The party seeking to appeal bears the burden of establishing standing." *Id.*, citing *Duetsche Bank Trust Co., v. Barksdale Williams*, 8th Dist. Cuyahoga No. 88252, 2007-Ohio-1838, ¶ 12.

{¶24} Here, we must overrule the portion of Rodolfo's first assignment of error pertaining to Korrina's motions because Korrina is not a party to this appeal and because Rodolfo lacks standing to raise the trial court's denial of her motions. Accordingly, we overrule his assignment of error as it relates to the trial court's denials of Korrina's motions. *In re Conn*, 10th Dist. Franklin Nos. 03AP-348, 03AP-349, and 03AP-372, 2003-Ohio-5344, ¶ 7 (concluding that the father's assignments of error are not well-taken and therefore overruled because he lacked standing to raise claims on behalf of the paternal uncle and mother); *In re T.W.*, 1st Dist. Hamilton No. C-130080, 2013-Ohio-1754, ¶ 9 (concluding that the father lacked standing to raise arguments on behalf of a great-grandmother, a nonappealing party).

*Manifest Weight*

**{¶25}** When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court

> "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'"

*Eastley* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); accord *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶ 23-24, quoting *Thompkins* at 387, quoting *Martin* at 175.

*R.C. 2151.414*

**{¶26}** Now, we turn to address the parents remaining assignments of error. In this case, the trial court concluded that R.C. 2151.414(B)(1)(a) and (d) were applicable. (Doc. No. 118). "[T]he findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, [and] each is independently sufficient to use as a basis to grant the Agency's motion for permanent custody." *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 80, citing *In re Langford Children*, 5th Dist. Stark No. 2004CA00349, 2005-Ohio-2304, ¶17. Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period, a trial court need not find

-13-

that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. *In re I.G.*, 3d Dist. Marion Nos. 9-13-43, 9-13-44, and 9-13-45, 2014-Ohio-1136, ¶ 30, citing R.C. 2151.414(B)(1)(d); *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 14, citing *In re I.G.* at ¶30.

{¶27} Notwithstanding the agency's *unsuccessful attempt* to return M.O. to Cheyanne under an order of protective supervision in 2018 and after our review of the evidence related to M.O.'s custody situation under R.C. 2151.414(B)(1)(d), the record supports that M.O. had been in the temporary custody of the agency continuously since her removal in 2017.[6] (Doc. Nos. 5, 23, 24, 59, 62, 64, 65); (Aug. 6, 2019 Tr., Vol. II, at 195, 235). The agency filed its permanent-custody motion on March 7, 2019 with the final hearing taking place on August 5 and 6, 2019. Thus, the record is clear that M.O. was in the temporary custody of the agency from 2017 until 2019 in excess of 12 months in a consecutive 22-month period.

{¶28} Accordingly, based on the evidence presented and because it is dispositive, we conclude that the trial court's determinations under R.C. 2151.414(B)(1)(d) are sufficient to satisfy the first prong of the permanent-custody test and are not against the manifest weight of the evidence.

---

[6] Even supposing we were to look at the unsuccessful attempt to return M.O. as a cessation in the continuity of the agency's temporary custody, at the point the agency filed their motion for permanent custody, M.O. had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. (*See* Doc. No. 64). *In re N.M.P.*, ___ Ohio St.3d ___, 2020-Ohio-1458, ¶ 17, citing R.C. 2151.414(B)(1)(d).

*Best Interests*

**{¶29}** Thus, having satisfied the first prong of the permanent-custody test, we proceed to the second prong of the test—the trial court's consideration of the best-interest factors. R.C. 2151.414(D) contains the factors for a trial court to consider when determining whether granting permanent custody to an agency is in the best interests of a child. It reads as follows:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a)   The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b)   The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c)   The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

**{¶30}** After reviewing the evidence in the record and determining the applicability of R.C. 2151.414 (B)(1)(d), the trial court addressed the best interest factors under R.C. 2151.414(D)(1)(a)-(e), ultimately, concluding by clear and convincing evidence that it was in the best interest of M.O. that the agency be awarded permanent custody.

**{¶31}** While the trial court did not refer to the subsections under R.C. 2151.414(D)(1)(a)-(e) explicitly, it specifically addressed the evidence upon which it relied in consideration of the statutory factors and stated that it specifically considered R.C. 2151.144(D)(1)(a)-(e). *See In re M.R.*, 2013-Ohio-1302, at ¶ 78 ("While it is far from the better practice, we find that the trial court's citation to the appropriate statute when making its best interest finding meets its obligation, albeit to the minimum extent possible, in demonstrating that the R.C. 2151.414(D) factors were considered."). Additionally, in its judgment entry, the trial court made findings relevant to the R.C. 2151.414(D) factors. *See id.,* ("Moreover, * * * there is clear and convincing evidence in the record to support the trial court's finding that it is in M.R.'s best interest to grant the Agency's motion for permanent custody.").

{¶**32**} Addressing R.C. 2151.414(D)(1)(a), which concerns the relationships with the children, the children's parents, siblings, relatives, and foster-care givers, the record contains evidence that M.O. is bonded with her parents, siblings, and foster care givers and the trial court noted the testimonies of the foster mother, Jessica Trinko, Dr. David Connell, and Jones. (Aug. 5, 2019 Tr., Vol. I, at 41-42, 48-49, 51, 57, 59, 61, 94, 109); (Aug. 6, 2019 Tr., Vol. II, at 177, 194-195, 219-220, 229, 236-240, 249-251, 320, 351).

{¶**33**} Regarding factor (D)(1)(b), concerning the wishes of the child as expressed directly or through the recommendation of the GAL, the GAL filed a report recommending that permanent custody be granted to the agency. (Aug. 6, 2019 Tr., Vol. II, at 390); (Trial Court Ex. A).

{¶**34**} Lastly, the trial court discussed factors (D)(1)(c) and (D)(1)(d), which concerns the child's custodial history and her need for permanency. Specifically, the trial court found that the child had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. (Doc. No. 118).

{¶**35**} After reviewing the best-interest factors on appeal, we find that there is clear and convincing evidence in the record to support the trial court's determination that granting permanent custody to the agency was in the best interests of the child. Accordingly, the trial court's decision is not against the manifest weight of the evidence.

*Reasonable Efforts*

**{¶36}** Turning to Cheyanne's and Rodolfo's reasonable-efforts arguments, we conclude that the trial court made the appropriate reasonable-efforts finding.

> No one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F.*, 11 Ohio St.3d 73, 2007-Ohio-1104, ¶ 29. In particular, under R.C. 2151.419, when a trial court

> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1). The Supreme Court of Ohio

> determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing.

(Emphasis sic.) *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08, and 3-17-09, 2018-Ohio-125, ¶ 25, citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable-efforts determination under R.C. 2151.419 does not apply to permanent-

custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414).

> According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at 'adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state.'

*In re B.S.*, 3d Dist. Allen No. 1-15-44, 2015-Ohio-4805, ¶ 36, quoting *In re C.F.* at ¶ 41.

{¶37} Moreover, since the trial court made its reasonable-efforts finding when it granted emergency custody to the agency by ex-parte order at the time of the shelter-care hearing, initial dispositional hearing, and March 13, 2018 extension hearing, and ordered that M.O. remain in the temporary custody of the agency at the dispositional hearings, the trial court was not required to make any further reasonable-efforts findings. (*See* Doc. No. 5); *In re S.D.*, 9th Dist. Lorain Nos. 15CA010864 and 15CA010867, 2016-Ohio-1493, ¶ 25. Stated another way, because the trial court previously made the requisite R.C. 2151.419 "reasonable efforts" findings, it was not required to again make those findings at the hearing on the agency's motion for permanent custody filed under R.C. 2151.413. *See In re C.F.* at ¶ 43.

{¶38} Here, the trial court specifically concluded that the agency had made "*reasonable efforts* to prevent the need for removal of said child from her home * *

*." (Emphasis sic.) (Doc. No. 5). In addition to the requirement under R.C. 2151.419(A)(1) that the trial court determine whether the agency made reasonable efforts to preserve or reunify the family unit, R.C. 2151.419(A)(1) further provides:

> If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

R.C. 2151.419(A)(1).

{¶39} The trial court's reasonable-efforts finding is supported by clear and convincing evidence in the record. The record reveals that the parents had worked with the children's services agency since 2017 regarding their drug-related issues exhausting both six-month extensions. (*See* Aug. 6, 2019 Tr., Vol. II, at 193-198).

{¶40} For these reasons, we conclude that the trial court's reasonable-efforts finding does not run afoul of the requirements of R.C. 2151.419(A)(1). That is, the trial court correctly identified that M.O. was removed from her home during an emergency in which she could not safely remain in the home. Thus, based on the facts and circumstances of this case, M.O.'s health and safety were paramount to any service that Cheyanne or Rodolfo argues that the agency could have afforded to them. *See In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38, and 9-15-39, 2017-Ohio-142, ¶ 68 ("'Nevertheless, the issue is not whether there was anything more

that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case.'"), quoting *In re Leveck*, 2003-Ohio-1269, at ¶ 10.

*Relative placement not appropriate*

{¶41} Lastly, we address the second portion of Rodolfo's first assignment of error arguing that the trial court erred by denying his motion for a change in dispositional orders. R.C. 2151.412 provided in its pertinent parts:

> (H) In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
>
> * * *
>
> (5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency;

R.C. 2151.412 (H)(5).

{¶42} The child's permanency that fosters growth, stability, and security serves the child's best interests. *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 323-324 (1991). Accordingly, a trial court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re A.C.*, 12th Dist. Butler No. CA 2006-12-105,

2007-Ohio-3350, ¶ 17; *In Re Dylan B., Luna B.*, 5th Dist. Stark No. 2007-CA-00362, 2008-Ohio-2283, ¶ 66; *In re Turner*, 5th Dist. Stark No. 2006-CA-00062, 2006-Ohio-4906, ¶ 35; *In re Perry*, 4th Dist. Vinson Nos. 06 CA 648 and 06 CA 649, 2006-Ohio-6128, ¶ 62.

{**¶43**} The trial court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors; there is not one element that is given greater weight than the others. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56. Here, the trial court satisfied its statutory duty in reaching the conclusion that permanent custody was in M.O.'s best interest. That duty does not include the requirement that the trial court determine it is in the best interest of a child to grant permanent custody to an agency finding by clear and convincing evidence that no suitable relative is available for placement.

> The statute requires a weighing of all relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors.

*Schaefer* at ¶ 64; *In Re Dylan B., Luna B.*, 5th Dist. Stark No. 2007-CA-00362, 2008-Ohio-2283, ¶ 67; *In re Avon*, 5th Dist. Tuscarawas No. 2006-AP-09-0051, 2007-Ohio-1431, ¶ 26.

{¶44} Based on the evidence, the trial court properly denied Rodolfo's motion for a change of disposition requesting it grant legal custody to Korrina. There was sufficient evidence submitted at the hearing to call into question Korrina's bond with M.O.; her desire to provide a long term, stable placement for M.O.; at the initiation of the case whether she was aware the parents were absconding with M.O. out of state; and finally, her lack of cooperation with the investigation to locate M.O.[7] (Aug. 6, 2019 Tr., Vol. II, at 173-177, 188, 234-252). After our review of the record, we concur with the trial court that the best interest of M.O. cannot be served by placement with her paternal-half-blood-adult sibling, Korrina.

{¶45} For these reasons, we find that the trial court did not abuse its discretion in denying Rodolfo's motion for change of disposition.

{¶46} Accordingly, we conclude that the trial court did not err by granting permanent custody of M.O. to the agency. Therefore, Cheyanne's first, second, and third assignments of error and Rodolfo's first and second assignments of error are overruled.

---

[7] The parents absconded the jurisdiction (traveling to Las Vegas, Nevada) with M.O. once they became aware that the agency intended to seek an order of temporary custody. (Aug. 6, 2019 Tr., Vol. II, at 249).

{¶47} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**